UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETREUS A. KEAHEY, | ) | Case No. 3:16CV1131 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the court is the petition of Demetreus A. Keahey

("Keahey") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The

petitioner is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case of *State of Ohio v. Keahey*, Case

No. 2011-CR-275 (Erie County October 4, 2012).  (R. 7, RX 9, PageID #: 245-249.)

For the following reasons, the magistrate judge recommends that the petition be

denied.

The petitioner has filed a petition *pro se* for a writ of habeas corpus, arising

out of his 2012 convictions for felonious assault, attempted murder, and other

crimes, in the Erie County (Ohio) Court of Common Pleas.  In his petition, Keahey

raises seven grounds for relief. As set forth in the habeas petition form, his grounds

are:

> 1. The State Trial Court erred to the prejudice of the petitioner when denying the defense's request for a self-defense jury instruction violating 5th, 6th, and 14th Amendments.
>
> 2. The trial court erred to the prejudice of the petitioner and abused its discretion when the court declined to provide a jury instruction on necessity when sufficient evidence [that warranted this instruction].
>
> 3. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise significant issues on direct appeal violating the 5th, 6th, and 14th Amendments.
>
> 4. The petitioner was denied effective assistance of trial counsel violating the 5th, 6th, and 14th Amendments.

(R. 1, § 12, PageID #: 5, 7-8, 10.) The petition form itself contains only the above

four claims.

However, Keahey also filed an additional, supplemental petition in narrative

form which re-asserted the aforementioned claims and included additional claims,

thereby asserting the following seven grounds for relief:

> 1. The state trial court erred to the prejudice of petitioner when denying the defense's request for a self-defense jury instruction which was an affirmative defense to the crime charged denying petitioner's fundamental constitutional rights to present a defense, due process of law, and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.
>
> 2. The state trial court erred to the prejudice of petitioner and abused its discretion when declining to provide a jury instruction on necessity an affirmative defense to the crime charged when sufficient evidence was submitted to support such instruction denying petitioner's fundamental constitutional rights to present a defense, due process of

law, and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

3. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal that petitioner's offenses of improperly discharging a firearm at or into a habitation under R.C. 2923.161(A)(1), and attempted murder under R.C. 2923.02(A), should have been merged for sentencing as allied offenses under R.C. 2941.25(A), violating petitioner's constitutional rights under the Double Jeopardy Clause and right to effective assistance of counsel guaranteed by the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

4. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal that petitioner was denied his constitutional right to be present at critical stages of the trial proceedings violating petitioner's rights under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

5. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a sufficiency of evidence claim on direct appeal in regards to Count Eight for improperly discharging a firearm at or into a habitation under R.C. 2923.161(A), violating petitioner's [rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

6. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal regarding the trial court's denial of trial counsel's motion for mistrial when the bailiff came into contact with a juror in violation of R.C. 2945.33, violating petitioner's [rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

7. The petitioner was denied effective assistance of trial counsel when counsel failed to investigate and subpoena certain defense witnesses to testify at trial, failed to request forensic testing on the knife found at the scene for DNA or fingerprints, failed to secure the petitioner's presence at the jury view, and failed to move for recusal of the judge based on an actual conflict of interest violating the petitioner's [rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

(R. 1-1, PageID #: 24, 34, 41, 46, 54, 59, 62.)

The respondent has filed a Return of Writ, addressing the petitioner's seven

claims as they are presented in the supplemental petition (R. 7, PageID #: 137-138),

and Keahey has filed an Traverse (R. 10.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following background:

Appellant and Kindra McGill are the parents of a daughter, K.K. In
addition, Kindra is the former girlfriend of Prince Hampton, who is the
father of her two boys, P.H. and D.H. Because of several factors,
including Kindra's affiliation with both appellant and Prince, an
incident arose at the home of Kindra and appellant on May 7, 2011,
during which Prince pulled a knife and stabbed appellant in the back.
Appellant was hospitalized for several days with a collapsed lung.
Neither Kindra nor appellant named Prince as the person who stabbed
appellant. Consequently, no one was charged with a crime in that
instance. However, on June 15, 2011, text messages were exchanged
between appellant and Kindra, in which the two discussed Kindra's
reluctance to name Prince as appellant's attacker, and also appellant's
desire to retaliate against Prince for the stabbing.

At some point after May 7, 2011, Kindra and her children began living
with Kindra's mother, Joyce McGill, at [redacted] Aspen Run Road in
Sandusky, Ohio. On the morning of June 20, 2011, appellant drove to
the Aspen Run Road house with the stated intent of picking up K.K.
and Kindra so he could take them to the doctor's office for K.K.'s
scheduled appointment. Appellant arrived early, parked his vehicle on
the street in front of the house, and walked inside. After a brief
conversation with Joyce appellant went back outside, where he saw a
vehicle pulling into the driveway. In the vehicle were Prince, Kindra's
two boys, and A.C., the young son of Prince's then-girlfriend.

When Prince exited the vehicle, appellant drew a gun and fired several
shots at Prince. One bullet hit Prince in the arm, and another went
through his pants pocket, hitting him in the leg. That same bullet

4

shredded a roll of paper money that was in Prince's pocket, causing confetti-like pieces of the bills to scatter on the ground.

After appellant began firing at him, Prince ran down the street. At that point, appellant got into his car and drove away. While witnesses' accounts varied, it is undisputed that someone shouted "you are a dead nigga" as appellant's vehicle drove down the street. Prince collapsed several blocks from McGill's house. Neighbors called 911, medical assistance was dispatched to the scene, and Prince was taken to the hospital. Police arrived on the scene in response to neighbors' calls, where they discovered that one bullet had gone through the door of Prince's vehicle, and another one had gone through the outside wall and into the living room of McGill's neighbor, Brunell Hendrickson. Still another bullet was found under Prince's vehicle, and several more were later found on the ground in the surrounding area. In addition, a pair of flip-flop sandals and a closed pocket knife were found on the driveway near Prince's vehicle.

After the altercation appellant fled to Erie, Pennsylvania. On July 25, 2011, while appellant was still in Pennsylvania, the Erie County Grand Jury indicted him on one count of drug possession (in an unrelated case), one count of felonious assault on Prince Hampton, in violation of R.C. 2903.11(A)(2), one count of attempted murder of Prince Hampton, in violation of R.C. 2903.02(A), three separate counts of felonious assault on P.H, D.H. and A.C., one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(3), and one count of improperly discharging a firearm at or into a habitation or school safety zone, in violation of R.C. 2923.161(A).

A jury trial was held on September 4, 5, 6, 7 and 10, 2012. Trial testimony was presented on behalf of the state by Joyce and Kindra McGill, Brunell Hendrickson, Jeremy Pruitt, Robert and Evelyn Brown, Eric Jensen, and various members of the Sandusky Police Department.

* * * * * *

On September 10, 2012, the jury returned a verdict of guilty to one count of felonious assault and one count of attempted murder of Prince, one count of having a weapon while under disability, and one count of improperly discharging a firearm at or into a habitation or school safety zone. Not-guilty verdicts were returned as to felonious assault on P.H., D.J. and A.C. The remaining charge of drug

5

possession was later dismissed. On October 4, 2012, the trial court sentenced appellant to serve a total of 23 years in prison.

(R. 7, RX 20, PageID #: 377-380, 393; *State v. Keahey*, No. E-13-009, 2014 WL 5421028, at *1-*2, *9 (Ohio Ct. App. Oct. 24, 2014).)

### A. Direct Appeal

Keahey filed a timely direct appeal of his conviction, raising five assignments of error:

1. The trial court erred to the prejudice of Appellant and abused its discretion in declining to provide jury instructions on self-defense, an affirmative defense to the crime charged.

2. The trial court erred to the prejudice of Appellant and abused its discretion in declining to provide jury instructions on necessity, an affirmative defense to the crime charged.

3. The trial court violated the defendant's Sixth Amendment right and abused its discretion in making findings of fact.

4. The trial court erred to defendant's prejudice in denying Defendant's Motion for a Mistrial.

5. The trial court's errors, when taken together, deprived appellant of the fair trial as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section Sixteen of the Ohio Constitution Due Process Clauses.

(R. 7, RX 16, PageID #: 286.) The court of appeals affirmed the judgment of the trial court. (R. 7, RX 20, PageID #: 403; *Keahey*, 2014 WL 5421028, at *13.)

Keahey filed a timely appeal to the Supreme Court of Ohio. Keahey set forth the following propositions of law:

1. Whether the trial court erred to the prejudice of appellant and abused its discretion in declining to provide jury instructions on self-

defense, an affirmative defense to the crime charged violating appellant's fundamental constitutional rights under the Due Process Clause and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

2.  Whether the trial court erred to the prejudice of appellant and abused its discretion in declining to provide jury instructions on necessity, an affirmative defense to the crime charged violating appellant's fundamental constitutional rights under the due process clause and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

3.  Whether the trial court violated the appellant's Sixth Amendment right and abused its discretion in making findings of fact.

4.  Whether the trial court erred to appellant's prejudice in denying appellant's motion for a mistrial violating fundamental constitutional rights under the Due Process Clause and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

5.  Whether the trial court's errors, when taken together, deprived appellant of a fair trial as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section Sixteen of the Ohio Constitution Due Process Clause.

(R. 7, RX 22, PageID #: 407-408.)  On April 8, 2015, the court declined to accept

jurisdiction of the appeal.  (R. 7, RX 24; *State v. Keahey*, 142 Ohio St.3d 1424, 28

N.E.3d 122 (2015).)

Keahey then filed a petition for a writ of certiorari in the United States

Supreme Court.  He presented three questions for review:

1.  Whether the trial court erred to the prejudice of petitioner and abused its discretion when declining to provide a jury instruction on self-defense, an affirmative defense to the crime charged when sufficient evidence was submitted to support such an instruction violating petitioner's fundamental constitutional rights under the Due Process Clause and right to a fair trial guaranteed under the Fifth,

7

Sixth, and the Fourteenth Amendments to the United States Constitution.

2. Whether the trial court erred to the prejudice of petitioner and abused its discretion when declining to provide a jury instruction on necessity, an affirmative defense to the crime charged when sufficient evidence was submitted to support such an instruction violating petitioner's fundamental constitutional rights under the Due Process Clause and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

3.  Whether Ohio law that precludes a defendant from raising the defense of necessity when defendant is charged for an offense of having a weapon while under disability under R.C. 2923.13(A) is inconsistent and contrary to United States Court of Appeals and United States Supreme Court decisions.

(R. 7, RX 25, PageID #: 473.)  The petition for writ of certiorari was denied on October 5, 2015.  (R. 7, RX 26; *cert. denied*, 136 S.Ct. 71 (2015).)

### B.  Rule 26(B) Application

On January 2, 2015, Keahey filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B).  (R. 7, RX 27.)  Keahey argued that appellate counsel was ineffective for failing to raise the following claims:

(1.)  Appellant counsel's failure to raise trial counsel's ineffectiveness when trial counsel failed to retain an expert witness for the defense when sufficient evidence existed for counsel to obtain an expert witness constituted ineffective assistance of counsel.

(2.)  Appellant counsel's failure to raise the trial court's error when failing to merge the attempted murder and improperly discharging a firearm at or into a habitation or school safety zone as allied offenses under R.C. 2941.25 constituted ineffective assistance of counsel.

(3.)  Appellant counsel's failure to raise a claim that appellant was denied his constitutional right to be present at trial constituted ineffective assistance of counsel.

(4.)  Appellant counsel's failure to raise a claim that the trial court erred when the court denied trial counsel's motion for mistrial when the Bailiff came into contact with a juror in violation of R.C. 2945.33, constituted ineffective assistance of counsel.

(5.) Appellant counsel's failure to raise a claim that the state failed to present sufficient evidence under Count 8, constituted ineffective assistance of counsel.

(R. 7, RX 27, PageID #: 506, 508-509, 511-512.)

The court of appeals denied his application to reopen.  (R. 7, RX 30.)  The court reviewed the issues presented, and found that Keahey had failed to raise a colorable claim of ineffective assistance of appellate counsel.  (R. 7, RX 30, PageID #: 570.)

Keahey then filed a timely appeal to the Supreme Court of Ohio.  Keahey set forth the following proposition of law:

The Court of Appeals erred when it denied appellant's application to reopen appeal when appellant was denied effective assistance of appellate counsel on direct appeal in violation of the Fifth, Sixth, and the Fourteenth Amendments to the U.S. Constitution.

(R. 7, RX 32.)  The court declined to accept jurisdiction of the appeal.  (R. 7, RX 34; *State v. Keahey*, 142 Ohio St.3d 1478, 31 N.E.3d 656 (2015).)

In addition, while the appeal to the state high court was pending, Keahey filed a motion for reconsideration with the state court of appeals, which was denied. (R. 7, RX 35, 37.)

9

### C.  Petition for Post-Conviction Relief

Keahey also filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21, on July 5, 2013.  (R. 7, RX 38.)  His petition was based on four claims:

> 1.  Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of [trial] counsel was violated.
>
> 2.  Conflict of interest [between defendant and trial judge].
>
> 3.  Petitioner requested a jury view which counsel refused to allow petitioner to attend.
>
> 4.  Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of [trial] counsel was violated.

(R. 7, RX 38, PageID #:  669-671.)  The trial court denied the petition.  (R. 7, RX 42.)

Keahey appealed the denial, raising a single assignment of error:

> 1.  The trial court committed error when they abused [their] discretion by denying defendant-appellant's post-conviction petition, in violation of defendant-appellant's due process rights under the 6th and 14th Amendments to the United States Const. and Art. I Sec. 10 of the Ohio Const.

(R. 7, RX 44.)  The court of appeals found his assignment of error not well-taken, and affirmed the judgment of the trial court.  (R. 7, RX 46, PageID #: 890-891; *State v. Keahey*, No. E-13-055, 2014 WL 5794329, at *10 (Ohio Ct. App. Nov. 7, 2014).)

Keahey filed an appeal with the Supreme Court of Ohio, raising a single proposition of law:

> 1.  Whether the appellate court erred when affirming the trial court's denial of appellant's petition for postconviction relief without

remanding this case back to the trial court for an evidentiary hearing.

(R. 7, RX 48.)  The court declined to accept jurisdiction of the appeal.  (R. 7, RX 57;

*State v. Keahey*, 142 Ohio St.3d 1476, 31 N.E.3d 654 (2015).)

Keahey filed a timely petition for a writ of habeas corpus in this court.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim that was adjudicated on the merits by a state court.  The

Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405.  *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).  A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

Keahey has filed his petition *pro se*.  The pleadings of a petition drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam)).  No other special treatment is afforded litigants who decide to proceed *pro se*.  *McNeil v. United States*, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

### III. PROCEDURAL DEFAULT

The respondent contends that the seventh ground of Keahey's petition, which alleged ineffective assistance of trial counsel, has been procedurally defaulted. The respondent argues that, although the claim was presented to the trial court in his postconviction petition, the claim was not pursued on appeal. (R. 7, PageID #: 141-142.) Keahey responds that the state court of appeals addressed his claims. (R. 10, PageID #: 2334-2335.)

A habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). The respondent argues that Keahey's seventh ground was not properly exhausted in state court. (R. 7, PageID #: 141-142.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001), *cert. denied*, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of

13

the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Adams v. Bradshaw*, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing *Buell*, 274 F.3d at 349).

The seventh ground of the petition asserts an ineffective assistance of trial counsel claim that Keahey raised before the trial court in his petition for post-conviction relief.  (R. 7, RX 38.)  When his post-conviction petition was denied, Keahey appealed the denial to the state court of appeals.  The respondent asserts that the constitutional issues cannot be considered as presented to the state court because Keahey's sole assignment of error was framed as error by the trial court, regarding that court's denial of his post-conviction petition.  (R. 7, PageID #: 141-142.)  Keahey responds that the state court of appeals addressed the merits of his claims of ineffective assistance of trial counsel.  (R. 10, PageID #: 2334-2335, quoting R. 7, RX 46, PageID #: 882; *Keahey*, 2014 WL 5794329, at *6.)

The court finds that the seventh ground is not barred by a failure to exhaust the claims, insofar as the state court of appeals addressed his claims.  The requirement of exhaustion is that a state prisoner "must give the state courts an

14

opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842.  Exhaustion is not a simple procedural requirement, but rather based in comity, so that where a prisoner challenges his confinement under a state court conviction as a violation of federal law, "the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* at 844.  Despite the inartful framing of his assignment of error, the state court of appeals was able to review the constitutional claims at issue.  Therefore, the seventh ground is not barred by a failure to exhaust the claims at the court of appeals.

However, to satisfy exhaustion, a habeas petitioner must invoke "one complete round of the State's established appellate review process," *O'Sullivan*, 526 U.S. at 845, which means that the highest court in the state must also be given a full and fair opportunity to rule on the claims, *Rust*, 17 F.3d at 160.  Keahey's appeal to the state supreme court raised a single proposition of law:

> 1.  Whether the appellate court erred when affirming the trial court's denial of appellant's petition for postconviction relief without remanding this case back to the trial court for an evidentiary hearing.

(R. 7, RX 48.)  Although presented as a single proposition of law, Keahy's brief in support argued the merits of the underlying claims, including the ineffective assistance of trial counsel claim, which he asserted that the lower courts had ruled on erroneously.  Therefore, the court considers the seventh ground to have been

15

fairly presented to the state courts, and not defaulted.  The court will address the merits of that ground below.


## IV.  JURY INSTRUCTIONS

The first two grounds for relief concern jury instructions.  Petitioner contends:

> 1.  The state trial court erred to the prejudice of petitioner when denying the defense's request for a self-defense jury instruction which was an affirmative defense to the crime charged denying petitioner's fundamental constitutional rights to present a defense, due process of law, and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.
>
> 2.  The state trial court erred to the prejudice of petitioner and abused its discretion when declining to provide a jury instruction on necessity as an affirmative defense to the crime charged when sufficient evidence was submitted to support such instruction denying petitioner's fundamental constitutional rights to present a defense, due process of law, and right to a fair trial guaranteed under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

(R. 1-1, PageID #: 24, 34.)

> On direct appeal, however, Keahey presented these claims as follows:
>
> 1.  The trial court erred to the prejudice of Appellant and abused its discretion in declining to provide jury instructions on self-defense, an affirmative defense to the crime charged.
>
> 2.  The trial court erred to the prejudice of Appellant and abused its discretion in declining to provide jury instructions on necessity, an affirmative defense to the crime charged.

(R. 7, RX 16, PageID #: 286.)  Keahey did not present his claims as federal claims, arguing instead that the state court abused its discretion, and misapplied state law, in its determination that he was not entitled to jury instructions on self-defense or necessity.  (R. 7, RX 16, PageID #: 293-300.)  The respondent, however, does not argue that Keahey's federal claims should be barred on the basis that his federal claims were not fairly presented to the state courts.  *See generally* R. 7, PageID #: 145-152.

The state court of appeals likewise addressed these two claims as a matter of state law.  The appellate court stated:

> In his first assignment of error, appellant asserts that the trial court erred by refusing to instruct the jury as to the affirmative defense of self-defense.  In support, appellant argues that the trial court improperly found that his testimony was not credible and refused to give a self-defense instruction on that basis.

> In *State v. Lillo*, 6th Dist. Huron No. H–10–001, 2010–Ohio–6221, ¶ 15, this court stated:

>> Generally, requested jury instructions should be given if they are a correct statement of the law as applied to the facts in a given case.  *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).  A court's instructions to a jury "should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981).  Prejudicial error is found where, in a criminal case, a court refuses to give an instruction that is pertinent to the case, states the law correctly, and is not covered by the general charge.  *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992).

> Appellant correctly states that the inquiry into whether sufficient evidence has been presented to raise an affirmative defense is a matter

of law that is reviewed de novo. *State v. Belanger*, 190 Ohio App.3d 377, 2010–Ohio–5407, 941 N.E.2d 1265 ¶ 4 (3d Dist.). However, the trial court's ultimate decision to refuse the requested jury instructions will not be overturned on appeal absent a finding of abuse of discretion. *Lillo, supra*, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

In cases where the requested instruction involves an affirmative defense, the accused must show that he or she "has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of that defense." *State v. Carter*, 4th Dist. Ross No. 1 0CA3169, 2010–Ohio-6316, ¶ 58, citing *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus.  It is the duty of the defendant to "first present sufficient evidence at trial to warrant such an instruction." *Belanger*, at ¶ 3.  Such evidence is to be viewed in a light most favorable to the defendant.  *Id.*  Nevertheless, the trial court may "omit any requested instructions that are not correct statements of the law and applicable to the case before it." *Id.*, citing *State v. Scott*, 26 Ohio St.3d 92, 497 N.E.2d 55 (1986).

In Ohio, "self-defense is an affirmative defense that legally excuses admitted criminal conduct." *State v. Edwards*, 1st Dist. Hamilton No. C1 10773, 2013–Ohio–239, ¶ 5.  To demonstrate the affirmative defense of self-defense through deadly force, an accused must show by a preponderance of evidence that:

> (1) [they were] not at fault in creating the situation giving rise to the affray, (2) [they] had a bona fide belief that they were in imminent danger of death or great bodily harm and their only means of escape from such danger was the use of such force, and (3) [they] must not have violated any duty to retreat or avoid the danger.  *State v. Robbins*, 58 Ohio St.2d 74, 338 N.E.2d 755 (1979), paragraph two of the syllabus.

As to the first element, appellant testified at trial that he decided at the last minute to drive to Joyce's house instead of meeting Kindra and K.K. at the doctor's office, and he did not know that Prince would be dropping off his sons while appellant was there.  Appellant also testified that he pulled out a gun and shot at Prince because Prince had a knife in his hand and, based on the events that occurred six weeks earlier, appellant was afraid that Prince would stab him.

18

Appellant stated that he did not immediately retreat to his vehicle because Prince pulled out a gun and he was afraid he would be shot in the back if he turned to leave.

Before denying appellant's request for a self-defense instruction, the trial court noted that appellant unilaterally decided to pick up Kindra and K.K., and that text messages exchanged between appellant and Kindra established a possible motive for appellant to attack Prince. The trial court also stated that appellant had a means of escape, which he failed to utilize. Other trial testimony established that no witnesses saw Prince with a gun, no gun was ever recovered, and the only knife that was found at the scene was closed and lying on the ground.

It is undisputed that appellant and Kindra had agreed to meet at the doctor's office. Appellant's stated motive for changing his mind and going to pick up Kindra and K.K. opened the door to the trial court's consideration of other motives, including the content of the text messages exchanged by appellant and Kindra. In addition, appellant testified that he carried a gun that morning despite the fact that, as a convicted felon, he is prohibited from carrying a firearm.

As to the third element, appellant's duty to retreat, undisputed testimony was presented that appellant arrived at Joyce's home in a vehicle, which he parked nearby on the street. Although appellant testified that he was afraid to turn his back on Prince and get into the vehicle, no testimony was presented as to why appellant could not have retreated in any other direction, or by any other method.

After considering the entire record in a light most favorable to appellant, we find that appellant failed to produce sufficient evidence to meet his burden as to the first and third elements of the affirmative defense of self-defense. A consideration of the second element, which required appellant to show that he reasonably believed he was in imminent danger of death or serious bodily harm, is unnecessary. *State v. Robinson*, 132 Ohio App.3d 830, 726 N.E.2d 581 (1st Dist., 1999).

Based on the foregoing, we conclude that the trial court did not err or otherwise abuse its discretion by refusing to provide the jury with a self-defense instruction. Appellant's first assignment of error is not well-taken.

In his second assignment of error, appellant asserts that the trial court erred by not instructing the jury as to the affirmative defense of necessity, as it relates to his conviction for carrying a weapon while under disability. Citing *State v. Crosby*, 6th Dist. Lucas No. L-03-1158, 2004-Ohio-4674, appellant argues that that he presented sufficient evidence to support such a defense, which "excuses a criminal act when the harm which results from compliance with the law is greater than that which results from a violation of the law."

As set forth above, "a trial court's determination as to whether the evidence produced at trial warrants a particular instruction is reviewed for an abuse of discretion." *Burns v. Adams*, 4th Dist. Scioto No. 12CA3508, 2014-Ohio-1917, ¶ 52. "A party must demonstrate not merely that the trial court's omission or inclusion of a jury instruction was an error of law or judgment but that the court's attitude was unreasonable, arbitrary or unconscionable." *Freedom Steel v. Rorabaugh*, 11th Dist. Lake No.2007-L-087, 2008-Ohio-1330, ¶ 10.

The defense of necessity is not codified in Ohio law, however, Ohio courts have held that the common-law elements of the defense are:

> (1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than (or at least equal to) that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm. *Dayton v. Thornsbury*, 2d Dist. Montgomery Nos. 16744, 16772, 1998 WL 598124 (Sept. 11, 1998).

Traditionally, the defense of necessity requires pressure from physical forces, as opposed to the defense of duress, which involves a human threat. *Id.* In this case, appellant testified at trial that he was forced to carry a gun because he was afraid of Prince, in spite of the fact that he was legally forbidden to do so. Accordingly, appellant has not established that the harm in this case resulted from anything other than human action, as opposed to a physical force. In addition, as stated in our determination of appellant's first assignment of error, appellant failed to establish that he was not at fault in creating the

20

situation that led to his decision to fire his gun, wounding Prince and endangering the safety of children and nearby adults.

On consideration of the foregoing, we find that appellant has failed to establish the elements necessary to support a jury instruction on the affirmative defense of necessity.  Accordingly, we cannot say that the trial court abused its discretion by refusing to give such an instruction.  Appellant's second assignment of error is not well-taken.

(R. 7, RX 20, PageID #: 394-399 *Keahey*, 2014 WL 5421028, at *9-*11.)

The state court of appeals' determination was not based on any decision of the U.S. Supreme Court.  Thus, the question for this habeas court is whether the state court's decision was contrary to clearly established federal law as set forth by the Supreme Court.  A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405.  A state court decision is also "contrary to" clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406.  *See also Price*, 538 U.S. at 640.

The respondent argues that Keahey failed to demonstrate that the state court's rulings were contrary to U.S. Supreme Court precedent.  (R. 7, PageID #: 151-152.)  This court agrees, although the basis for this court's determination differs from that put forward by the respondent.

Keahey contends that "the Sixth Circuit has held that the right to assert a self-defense is a fundamental right." (R. 10, PageID #: 2337, citing *Taylor v. Withrow*, 288 F.3d 846 (6th Cir. 2002).)  He concedes that "whether the facts of the case warrant a jury instruction on self-defense remains a question for the state courts." (R. 10, PageID #: 2337.)  He then argues that the state court's decision cannot survive habeas review, because he presented sufficient evidence to require an instruction on self-defense.  In support, Keahey cites *Taylor v. Withrow*, a Sixth Circuit case discussed below, but he does not point to a Supreme Court decision which supports his argument on jury instructions.  *Id.*

The Supreme Court, in *California v. Trombetta*, affirmed the general principle that the Due Process Clause of the Fourteenth Amendment requires that criminal defendants are to be afforded "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  *Trombetta* was concerned with the preservation of evidence, not with self-defense or jury instructions.  In *Taylor v. Withrow*, cited by Keahey, the Sixth Circuit found:  "A necessary corollary of this holding [*Trombetta*] is the rule that a defendant in a criminal trial has the right, under appropriate circumstances to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Taylor*, 288 F.3d at 852.  The Sixth Circuit recognized that there was no Supreme Court decision "unmistakably setting down this precise rule," but found

that the lack of an explicit statement was not determinative.  *Id.*  The court asserted that "in certain circumstances refusing to instruct a jury properly on self-defense can so taint the resulting verdict as to be an error of constitutional dimension." *Id.* (citing cases).  Following this line of reasoning, the Sixth Circuit also ruled that "failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause." *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003) (quoting *Taylor*, 288 F.3d at 851).

*Taylor* and *Newton* were decided in 2002 and 2003.  Since that time, the Supreme Court has repeatedly stated that the AEDPA prohibits federal habeas courts from relying on precedent from the federal courts of appeals to conclude that a particular constitutional principle is "clearly established."  *See, e.g.*, *Lopez v. Smith*, 135 S.Ct. 1, 2 (2014) (per curiam).  The Supreme Court has emphasized that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) (citing *Renico v. Lett*, 559 U.S. 766, 778-779 (2010)).  The Court has stated that the petitioner must demonstrate Supreme Court case law which clearly establishes the legal proposition needed to grant habeas relief.  *Lopez*, 135 S.Ct.at 4.  The Court recently re-affirmed that circuit court precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court

23

has not announced." *Lopez*, 135 S.Ct.at 4 (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam)); *see also Shimel v. Warren*, 838 F.3d 685, 695-696 (6th Cir. 2016) (citing *Lopez*).

The Sixth Circuit in *Taylor* also noted that "the holding in *Mathews* has been taken by some courts as setting out a right to a jury instruction on self-defense." *Taylor*, 288 F.3d at 852 (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)). In the habeas context, *Mathews* does not support such a finding. In *Mathews*, the Supreme Court was sitting in review on direct appeal: "This case requires the Court to decide whether a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment." *Mathews*, 485 U.S. at 59. The Court's decision was based on the federal criminal law of entrapment, and the Court acknowledged that its ruling was not compelled by the Constitution. *Mathews*, 485 U.S. at 66; *see also id.* at 69 (White, J., dissenting). *Mathews* does not support a finding that Keahey's theory on jury instructions is supported by clearly established federal law, as determined by the Supreme Court.

Keahey has not demonstrated that the state court decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States. The petition should not be granted on the basis of the first ground.

In his arguments concerning the second ground, jury instructions on necessity, Keahey does not discuss any federal law. *See generally* R. 10, PageID #:

2339-2340.  His discussion concludes, however, that "for the same reasons set forth regarding self-defense," the state court decision cannot survive habeas review.  *Id*. at 2340.  Again, Keahey has not demonstrated that the state court decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.  The petition should not be granted on the basis of the second ground.

### V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The third, fourth, fifth and sixth grounds of the petition are based on an ineffective assistance of appellate counsel theory, and assert:

> 3. The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal that petitioner's offenses of improperly discharging a firearm at or into a habitation under R.C. 2923.161(A)(1), and attempted murder under R.C. 2923.02(A), should have been merged for sentencing as allied offenses under R.C. 2941.25(A), violating petitioner's constitutional rights under the Double Jeopardy Clause and right to effective assistance of counsel guaranteed by the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.
>
> 4.  The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal that petitioner was denied his constitutional right to be present at critical stages of the trial proceedings violating petitioner's rights under the Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.
>
> 5.  The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a sufficiency of evidence claim on direct appeal in regards to Count Eight for improperly discharging a firearm at or into a habitation under R.C. 2923.161(A), violating petitioner's

[rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

6.  The petitioner was denied effective assistance of appellate counsel when counsel failed to raise a claim on direct appeal regarding the trial court's denial of trial counsel's motion for mistrial when the bailiff came into contact with a juror in violation of R.C. 2945.33, violating petitioner's [rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

(R. 1-1, PageID #: 41, 46, 54, 59.)

Keahey raised these issues in his application to reopen his appeal pursuant to Ohio App. Rule 26(B).  (R. 7, RX 27.)  The court of appeals denied his application to reopen.  (R. 7, RX 30.)  The court reviewed the issues presented, and found that Keahey had failed to raise a colorable claim of ineffective assistance of appellate counsel.  (R. 7, RX 30, PageID #: 570.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 132 S.Ct. 1399, 1404 (2012); *Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in *Monzo v. Edwards*:

To establish ineffective assistance of counsel under *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's

26

performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Monzo*, 281 F.3d at 579 (internal citations omitted).  *See generally Strickland v.*

*Washington*, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of *Strickland* to the facts of this case was objectively unreasonable."  *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000).  The Supreme Court has affirmed that this court must approach the state court's rulings in a highly deferential manner. The Court stated in *Harrington v. Richter* that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 785 (2011).  The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.

*Richter* instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Richter*, 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied*, 132 S.Ct. 2376 (2012) (quoting *Richter*).  The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so.  *Id.* at 102; *see also Montgomery*, 654 F.3d at 676.

## A.  Allied Offenses

The state court addressed the third ground (failure to raise claim of merger of allied offenses) as follows:

> In his second argument, appellant asserts that his appeal should be reopened because appellate counsel failed to argue that his convictions for attempted murder and improper discharge of a firearm at or into a habitation should have been merged at sentencing.  In support, appellant argues that the two offenses "occurred on the same day, and from the same incident, and same conduct * * *." We disagree, for the following reasons.

> The Ohio Supreme Court has held that "the imposition of multiple sentences for allied offenses of similar import is plain error.  *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96-102.  Our determination as to whether offenses are allied offenses of similar import is *de novo.  State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1.

> Pursuant to R.C. 2941.45:

>> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

>> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to

28

> each, the indictment or information may contain counts
> for all such offenses, and the defendant may be convicted
> of all of them.

In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d
1061, the Ohio Supreme Court held that:

> In determining whether offenses are allied offenses of
> similar import under R.C. 2941.25(A), the question is
> whether it is possible to commit one offense and commit
> the other with the same conduct, not whether it is
> possible to commit one without committing the other.  ***
> If the offenses correspond to such a degree that the
> conduct of the defendant constituting commission of one
> offense constitutes commission of the other, then the
> offenses are of similar import.
>
> If the multiple offenses can be committed by the same
> conduct, then the court must determine whether the
> offenses were committed by the same conduct, i.e., "a
> single act, committed with a single state of mind." ***
>
> If the answer to both questions is yes, then the offenses
> are allied offenses of similar import and will be merged.
> Conversely, if the court determines that the commission
> of one offense will never result in the commission of the
> other, or if the offenses are committed separately, or if the
> defendant has a separate animus for each offense, then,
> according to R.C. 2941.25(B), the offenses will not merge.
> Id. at ¶ 48-50.

Two offenses are of dissimilar import if they are either: (1) a single act,
defined in terms of conduct toward another, that is, committed against
multiple victims, or (2) the same offense [that] is, committed toward
more than one victim during the same course of conduct.  *State v.
Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 30.
(Citations omitted.) For example, in a case where the setting of one fire
resulted in multiple victims, an Ohio court recently held that "separate
victims alone established a separate animus for each offense." *State v.
Crawley*, 8th Dist. Cuyahoga No. 99636, 2014-Ohio-921, ¶ 41, citing
*State v. Rogers*, 2013-Ohio-2124, 994 N.E.2d 499 (8th Dist.), *conflict
certified*, 136 Ohio St.3d 1508, 2013-Ohio-4657, 995 N.E.2d 1212.

29

The crime of attempted murder is defined in R.C. 2903.02(B) in terms of conduct towards another, in that the statute "prohibit[s] a defendant from causing or attempting to cause the death of another." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 80. The crime of improperly discharging a firearm at or into a habitation is prohibited by R.C. 2923.161(A), which states, in relevant part, that: "No person, without privilege to do so, shall* * *[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *."

It is undisputed that one of the bullets that appellant fired at the victim, Prince Hampton, also entered the nearby home of Brunell Hendrickson. Accordingly, because there were two separate victims in this case, there was a separate animus to support each offense, and they need not be merged at sentencing. Appellant's argument that his appellate counsel was ineffective for failing to raise this issue on appeal is, therefore, meritless. *State v. Tabasso*, 8th Dist. Cuyahoga No. 98248, 2013-Ohio-3721, ¶ 5, citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

(R. 7, RX 30, PageID #: 560-563.)

The state court found that appellate counsel was not ineffective because the issue that Keahey asserts counsel should have raised was without merit. Appellate counsel's failure to raise a legal claim which lacks merit cannot be found to violate *Strickland*'s deferential standard.

In his Traverse, Keahey argues that appellate counsel should have focused on elements of the crime(s) that he views as improperly decided by the state court. (R. 10, PageID #: 2344-2345.) In his appellate brief, Keahey's argument was somewhat simpler; basically, that because his conduct, and animus, was specifically directed at Prince, the two offenses should have been merged. (R. 7, RX 27, PageID #: 508-509.) The state court's decision rested on the fact that, under Ohio law, "because

30

there were two separate victims in this case, there was a separate animus to support each offense, and they need not be merged at sentencing."  (R. 7, RX 30, PageID #: 563.)

Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in *Richter*, the court finds that Keahey has failed to demonstrate that ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  Keahey has failed to establish that the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the third ground.

## B.  Defendant's Presence at Trial

The state court addressed the fourth ground (failure to raise claim of right to be present at trial) as follows:

> In his third argument, appellant asserts that his appeal should be reopened because appellate counsel was ineffective for failing to argue that his constitutional right to be present during "critical stages" of the trial court's proceedings was violated.  In support, appellant argues that his appointed trial counsel improperly waived his right to be present during: (1) proceedings regarding the dismissal of a juror, (2) the jury view of the crime scene, (3) arguments regarding jury instructions and "counsel's motion to suppress or limine," and (4) "three separate hearings related to notes from the jury during there [sic] deliberations."
>
> Generally, an accused has a fundamental right to be present at all critical stages of his criminal trial.  Crim.R. 43(A).  However, "the presence of a defendant is a condition of due process to the extent that

31

a fair and just hearing would be thwarted by his absence and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934). An accused's claim that his or her unwaived presence from a proceeding amounts to prejudice per se was rejected in *State v. Hale*, 119 Ohio St.3d 118, 892 N.E.2d 864, 2008-Ohio-3426, in which the Ohio Supreme Court found that such claims will not succeed absent a showing of prejudice. Id. at ¶ 103.

As to appellant's first claim, a review of the record shows that on the fourth day of appellant's trial, after the case was submitted to a jury, a bailiff had a conversation over the lunch hour with one of the jurors, Ruth Keegan. Upon being notified of the conversation, the trial court interviewed both the bailiff and Keegan concerning the content of their conversation. Both individuals stated that they were acquainted because their children played sports together. The bailiff also indicated that he made favorable comments to Keegan about the integrity of the trial judge.

After interviewing the bailiff and Keegan, the trial court and counsel for appellate and the state interviewed each juror individually. Defense counsel waived appellant's presence during those interviews. None of the jurors stated that they heard the bailiff speak about the trial judge. Several jurors stated that they knew Keegan and the bailiff were talking about their children. None of the jurors said that their view of appellant or the case was tainted in any way by the conversation. After the interviews were concluded, Keegan was dismissed as a juror and was replaced by an alternate.

Upon consideration, we find that the record does not show a violation of due process that rises to the level of preventing appellant from having a fair trial. Accordingly, appellant's claim that he was prejudiced by appellate counsel's failure to raise this issue on appeal is without merit.

As to appellant's second claim, R.C. 2945.16 provides:

> When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body *** to such place, which shall be shown to them by a person designated by the court. *** The accused has the right to attend such view by the jury, but may waive such right.

The record shows that appellant's attorney waived appellant's, and his own, presence at the jury view. The issue of whether trial counsel was ineffective for not personally attending the jury view was addressed by this court in *State v. Keahey*, 6th Dist. Erie No. E-13-055, 2014-Ohio-4971. In that case, we found appellant presented no evidence that he was prejudiced by trial counsel's failure to attend the jury view. Similarly, in this instance, the trial court's record shows that appellant and his trial counsel had input concerning the nature and scope of the jury view. Beyond that, the record contains no evidence that appellant was materially prejudiced by not attending the jury view and personally apprising the jury of "points of interest." Without such a showing, appellant cannot establish that his due process rights were violated and his second claim is without merit. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 98.

As to appellant's third claim, we note initially that appellant was present during discussions regarding proposed jury instructions. Appellant was not present when defense counsel made a successful verbal motion to limit evidence at trial regarding appellant's involvement with drugs. However, a review of the record shows that counsel sought to exclude such evidence so that appellant would not look like a "big drug dealer" to the jury. Accordingly, appellant has not demonstrated prejudice in these instances, and his claim to the contrary is without merit.

As to appellant's fourth claim, the record shows that defense counsel waived appellant's presence each time the jury sent out a note. However, a thorough review of each of those instances reveals no prejudice to appellant, for the following reasons: (1) in its first note, the jury asked why they were not allowed to consider Count 1 of the indictment, which was not even before the jury for consideration, (2) in its second note, the jury asked for lunch, (3) in its third note, the jury asked to review police and hospital reports, to which the court replied that the jury should rely on trial testimony evidence that was already submitted in reaching its decision, and (4) the jury's final communication was to state that it had reached a verdict.

On consideration of the foregoing, we find that appellant has failed to demonstrate that he suffered material prejudice as a result of his absence during the above proceedings. Appellant's claim that his appellate counsel was ineffective for not making such an argument is, therefore, meritless.

(R. 7, RX 30, PageID #: 563-567.)

The state court found that Keahey had failed to demonstrate that he suffered any material prejudice through his absence.  *See generally Snyder v. Massachusetts*, 291 U.S. 97 (1934).  Thus, the court rejected Keahey's arguments that he had suffered prejudice.  *See* R. 7, RX 29, PageID #: 543-545.  Appellate counsel's failure to raise a legal claim which lacks merit cannot be found to violate *Strickland*'s deferential standard.

Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in *Richter*, the court finds that Keahey has failed to demonstrate that ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  Keahey has failed to establish that the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. The petition should not be granted on the basis of the fourth ground.

### C.  Sufficiency of the Evidence

The state court addressed the fifth ground (failure to raise claim of sufficiency of the evidence) as follows:

> . . . appellant asserts that his appointed appellate counsel was ineffective for failing to argue that insufficient evidence was presented to support his conviction for improper discharge of a firearm at or into a habitation.  In support, appellant argues that his Crim.R. 29 motion for acquittal should have been granted because he "had no intent, or

34

awareness, that his conduct would have resulted in the shooting of Brunell Hendrickson's residence."

It is axiomatic that "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.  The term "sufficiency" of the evidence presents a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  The relevant inquiry in such cases is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

As stated above, R.C. 2923.161(A) provides, in relevant part, that: "No person, without privilege to do so, shall knowingly * * *[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *." Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Appellant argues that insufficient evidence was presented to support his conviction because he did not "knowingly" shoot into Hendrickson's house.  However, it is undisputed that appellant deliberately shot at Hampton in a residential neighborhood.  Accordingly, after considering all of the circumstances presented in this case, we conclude that there was sufficient evidence presented to support the element of "knowingly" and, therefore, an acquittal pursuant to Crim.R. 29 would have been inappropriate as to the crime of improper discharge of a firearm into an occupied structure.  Because the trial court's decision was not erroneous, appellant's claim that appellate counsel was ineffective for failing to raise the issue on appeal is not well-taken and his fifth argument in favor of reopening his appeal is meritless.

(R. 7, RX 30, PageID #: 568-570.)

Reviewing the state court's ruling in accordance with the guidance set forth in *Richter*, the court finds that Keahey has failed to demonstrate that ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Keahey has failed to establish that the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. The petition should not be granted on the basis of the fifth ground.

<u>D.  Motion for Mistrial</u>

The state court addressed the sixth ground (failure to raise claim that trial court erred in denying mistrial) as follows:

> . . . appellant asserts that his appellate counsel was ineffective for failing to challenge the trial court's denial of a mistrial after the court bailiff "came into contact with a juror in violation of R.C. 2945.33." In support, appellant argues that a violation of R.C. 2945.33 "will be presumed prejudicial and grounds for a mistrial."

> In reviewing the denial of a mistrial, an appellate court will give deference to the decision of the trial court, which was in the best position to determine whether such an extreme remedy was warranted. *State v. Carter*, 6th Dist. Lucas No. L-13-1255, 2014-Ohio-5212, ¶ 16; *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988). Accordingly, "a trial court's denial of a motion for mistrial will not be reversed absent an abuse of discretion." *Id.*, citing *State v. Rossbach*, 6th Dist. Lucas No. L-09-1300, 2011-Ohio-281 ¶ 39.

> Improper communication between a bailiff and jurors in a criminal trial may be grounds for a mistrial pursuant to R.C. 2945.33 which states, in relevant part, that:

> [the bailiff] shall not permit a communication to be made
> to [the jury], nor make any communication to ask if they
> have agreed upon a verdict, unless he does so by order of
> the court. Such officer shall not communicate to any
> person, before the verdict is delivered, any matter in
> relation to their deliberation.

However, communications that are outside the bounds expressed in
R.C. 2945.33 are not presumed to be prejudicial if they do not rise to
the level of misconduct. *State v. Glenn*, 1st Dist. Hamilton No.
C-090205, 2011-Ohio-829, ¶ 86. In this case, as set forth above,
communications were confined to comments between the bailiff and
one juror, concerning their children who, years earlier, played sports
together. The record also shows that the bailiff made favorable
statements about the trial court judge to that one juror. When the
communications were discovered by the court, the bailiff, the affected
juror, and all the other jurors were interviewed by the court and
counsel for both parties. In addition, the court administrator, assistant
administrator, and court magistrate were interviewed. Thereafter, the
court determined that none of the jurors were influenced by the
communication. Nevertheless, the juror who spoke directly to the
bailiff was dismissed from the jury and replaced by an alternate.

Upon consideration, we find that: (1) the communication between the
bailiff and the one juror, Ruth Keegan, was outside the bounds of
presumed prejudicial comments as expressed in R.C. 2945.33, and (2)
no prejudice to appellant resulted from those communications.
Accordingly, appellant's fourth argument is meritless.

(R. 7, RX 30, PageID #: 567-568.)

Reviewing the state court's ruling in accordance with the guidance set forth

in *Richter*, the court finds that Keahey has failed to demonstrate that ruling of the

state court "was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded

disagreement." *Richter*, 562 U.S. at 103. Keahey has failed to establish that the

state court decision involved an unreasonable application of clearly established

federal law, as determined by the Supreme Court.  The petition should not be granted on the basis of the sixth ground.

## VI.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The court now returns to the merits of the seventh ground of the petition, which alleges ineffective assistance of trial counsel, as follows:

> The petitioner was denied effective assistance of trial counsel when counsel failed to investigate and subpoena certain defense witnesses to testify at trial, failed to request forensic testing on the knife found at the scene for DNA or fingerprints, failed to secure the petitioner's presence at the jury view, and failed to move for recusal of the judge based on an actual conflict of interest violating the petitioner's [rights under the] Fifth, Sixth, and the Fourteenth Amendments to the United States Constitution.

The claims in the seventh ground were raised before the trial court in Keahey's petition for post-conviction relief, and subsequently addressed by the court of appeals.  (R. 7, RX 38, 46.)  The state court of appeals addressed his claims by first setting out the proper standards for assessing a claim of ineffective assistance.  (R. 7, RX 46, PageID #: 884-885; *Keahey*, 2014 WL 5794329, at *7 (citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) (syllabus); and *Strickland v. Washington*, 466 U.S. 668 (1984).)

The appellate court then addressed his specific claims:

> Appellant argues that his defense counsel was ineffective for failing to properly investigate the issue of which witnesses to call at trial. Specifically, appellant claims that counsel should have called Prince and William Myers as defense witnesses.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *State v. Philips*, 5th Dist. Stark No.2010 CA 00338, 2011–Ohio–6569, ¶ 26, quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Generally, trial counsel is entitled to a strong presumption that decisions regarding investigation and the calling of trial witnesses "fall within the wide range of reasonable professional assistance." *Shuster*, 5th Dist. Morgan No. 14 AP 0003, 2014–Ohio–4144, at ¶ 20, citing *State v. Sallie*, 81 Ohio St.3d 573, 675, 693 N.E.2d 267 (1998). The decision of whether or not to call a particular defense witness "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 980 N.E.2d 263, ¶ 222, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

The record shows that defense counsel conducted an in-depth cross-examination of each of the witnesses named by appellant with the exception of Prince and Myers, who did not testify at trial. As to those two individuals, appellant's assertion that Prince would have admitted owning the knife on Joyce's driveway and carrying a gun on June 20, 2011, is self-serving and speculative at best. Defense counsel's decision not to call Myers to testify for the defense was addressed during the trial, when defense counsel told the court he would not be calling Myers to the stand because he is a "loose cannon."

Upon consideration of the foregoing, we agree with the trial court that defense counsel adequately demonstrated "his knowledge/investigation of the facts of the case" during the course of the trial. Appellant's arguments to the contrary are without merit.

Appellant further claims that counsel was ineffective because he did not insist on testing the knife for Prince's DNA. Appellant argues that the presence of Prince's DNA on the knife would have bolstered his claim that Prince threatened him with a weapon.

Testimony was presented at trial that Prince attacked appellant with a knife in May 2011. Although no witness saw Prince holding a knife on June 20, 2011, testimony was presented that Prince owns and has been known to carry a knife. However, even if Prince's DNA were detected on knife through testing, such evidence would do nothing to show that Prince actually threatened appellant with that particular weapon. Accordingly, appellant was not unduly prejudiced by defense

counsel's decision not to insist that DNA tests be performed on the knife.

Appellant also claims that defense counsel was ineffective for not presenting expert testimony to show that four of the nine bullets recovered from the crime scene could have been fired by a gun other than his own.  Appellant argues that his expert's testimony, along with Myers' testimony, would have supported his claim that Prince fired a gun and he responded by firing at Prince in self-defense.

Appellant's claim of failure to secure expert ballistics testimony was not raised in appellant's petition for post-conviction relief, and the right to assert it in this appeal, has been waived.  *See State v. Barb*, 8th Dist. Cuyahoga No. 94054, 2010–Ohio5239, ¶ 25 (Citations omitted.) Nevertheless, since the ultimate question is whether appellant was prejudiced by counsel's alleged ineffectiveness, we will analyze the issue further.

It is well-settled that "'[t]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel.'" *State v. Jones*, 9th Dist. Summit No. 26226, 2012–Ohio–2744, ¶ 18, quoting *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993).  In this case, the record shows that defense counsel cross-examined the state's witnesses on the issue of whether four of the nine recovered bullets could have been fired from a second gun.  Appellant's claim that an expert would have been able to definitively state that bullets were recovered from two different guns is purely speculative.  Accordingly, upon consideration, we cannot say that appellant was unduly prejudiced by defense counsel's failure to obtain expert ballistics testimony in this case.

As to appellant's claim that counsel was ineffective for failing to attend the jury view to "point out critical facts to the jury" to support appellant's contention that he did not have a means of safely retreating, which is a critical element of the affirmative defense of self-defense.  We disagree, for the following reasons.

R.C. 2945.16 states:

> When it is proper for the jurors to have a view of the place
> at which a material fact occurred, the trial court may
> order them to be conducted in a body, under the charge of
> the sheriff or other officer, to such place, which shall be

> shown to them by a person designated by the court.
> While the jurors are absent on such view no person other
> than such officer and such person so appointed, shall
> speak to them on any subject connected with the trial.
> The accused has the right to attend such view by the jury,
> but may waive this right.

The record shows that, after reviewing the prosecution's plans for the jury view, defense counsel submitted written "points of interest" of his own for the jury to consider, including the location of Prince's vehicle on Joyce's driveway, and placement of the knife and sandals in relation to the vehicle.  Counsel said he did not plan on attending because he submitted issues for the jury's consideration and he had viewed the "area numerous times" in the past.  Defense counsel further stated that, after discussing the issue with appellant, appellant did not "really feel the need" to attend the jury view.

"[I]t is well-settled law in Ohio that a petitioner may not raise issues in a petition for post-conviction relief which could have been raised on direct appeal." *State v. Harrison*, 8th Dist. No. 79434, 2002 WL 450130, *2 (Mar. 14, 2002).  Issues that can be raised on appeal include claims that a defendant received ineffective assistance of counsel due to his absence during the jury view.  *See State v. Stivender*, 2d Dist. Montgomery No. 19094, 2002–Ohio–6864. Accordingly, this issue is barred by the doctrine of res judicata. *Harrison*, *supra*.

However, even if appellant's claim is not barred, post-conviction relief is available only for errors that are based on evidence that is outside the trial court's record.  *State v. Turner*, 8th Dist. Cuyahoga No. 91695, 2008–Ohio–6648, ¶ 8.  Appellant has failed to present any evidence to show that he has suffered prejudice by his and counsel's absence from the jury view, other than to opine that defense counsel could have educated the jury as to his "retreat theory" if he attended the jury view.  *Stivender*, *supra*, at ¶ 11.  Accordingly appellant has not demonstrated that his trial counsel was ineffective for not attending, or insisting that appellant attend the jury view.

(R. 7, RX 46, PageID #: 885-889; *Keahey*, 2014 WL 5794329, at *7-*10.)

As discussed earlier, the Sixth Amendment right to counsel "is the right to effective assistance of counsel." *Frye*, 132 S.Ct. at 1404 (2012); *Joshua*, 341 F.3d at 437.  The general standard for ineffective assistance of counsel was set out in *Monzo v. Edwards*:

> To establish ineffective assistance of counsel under *Strickland*, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Monzo*, 281 F.3d at 579 (internal citations omitted).  *See generally Strickland*, 466 U.S. at 689 (two-part test).

This court must approach the state court's rulings in a highly deferential manner.  *Richter* stated that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard.  *Richter*, 562 U.S. at 101.  The focus is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.

The petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing

42

law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Although Keahey disputes the state court's determinations[1] as to ineffective assistance based on the uncalled witnesses, and the failure to pursue DNA testing (R. 10, PageID #: 2355-2359), he does not meet this standard.

### Recusal of Trial Judge

Keahy's post-conviction petition also alleged "a conflict of interest" between Keahey and the trial judge. (R. 7, RX 38, PageID #: 670.) Keahey argued that the judge should have recused himself because he had been "the head of the Erie County Drug Task Force who helped prosecute" Keahey. (R. 7, RX 40, PageID #: 735.) Keahey asserts that, although the prosecutor recommended a term of eighteen years, the judge sentenced him to twenty-three years. *Id.* This claim was raised in Keahey's petition for post-conviction relief as a separate and distinct claim from his claim(s) of ineffective assistance of trial counsel. *See* R. 7, RX 38 (petition), PageID #: 669-670 (petition); *see also* R. 7, RX 44 (brief on appeal), PageID #: 786; and RX 45 (appellee's brief), PageID #: 862-863.

---

[1] Keahey concedes that the argument concerning the jury view is barred by res judicata. (R. 10, PageID #: 2360.)

The trial court denied the petition as to the conflict of interest claim on several grounds, asserting that he (the judge) had not been Head of the Drug Task Force, but merely an assistant prosecutor, and that he had no recollection of the 1998 case raised by Keahey.  (R. 7, RX 42, PageID #: 763.)  The court found no merit in the argument that a "conflict of interest" existed.  *Id.*

The court of appeals addressed the recusal issue as an argument of ineffective assistance of trial counsel.  (R. 7, RX 46, PageID #: 889-890; *Keahey*, 2014 WL 5794329, at *10.)  The appellate court stated that "the issue of bias on the part of a judge should be raised at the earliest opportunity or the issue is waived," and pointed out that Keahey had not filed a motion to disqualify prior to or during trial, nor had he raised the issue on direct appeal.  (R. 7, RX 46, PageID #: 890; *Keahey*, 2014 WL 5794329, at *10.)  The court found:  "A review of the record does not show bias on the part of the trial judge, and appellant does not offer any evidence from outside the record to demonstrate such bias."  *Id.*  The court also noted that the trial court was not bound by the prosecutor's recommendation as to the sentence.  The court found that Keahey's assignment of error was not well-taken.  The state court of appeals relied solely on state law in its decision.  (R. 7, RX 46, PageID #: 889-890; *Keahey*, 2014 WL 5794329, at *10.)

Thus, the issue for this habeas court is whether the state court decision was contrary to clearly established federal law, as determined by the U.S. Supreme Court.  The Supreme Court has stated that due process guarantees "an absence of

44

actual bias" on the part of a judge.  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905
 (2016) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).  The Court in *Williams*
held that "under the Due Process Clause there is an impermissible risk of actual
bias when a judge earlier had significant, personal involvement as a prosecutor in a
critical decision regarding the defendant's case."  *Williams*, 136 S. Ct. at 1905.  The
personal involvement referenced was "a direct, personal role" in the defendant's
current prosecution. *Id.* at 1906.  It did not refer to involvement in past cases.

In *Williams*, the Supreme Court of Pennsylvania vacated postconviction relief
 which had been granted to a prisoner sentenced to death.  "One of the justices on
the State Supreme Court had been the district attorney who gave his official
approval to seek the death penalty in the prisoner's case."  *Williams*, 136 S. Ct. at
1905.  The judge in question denied the prisoner's motion for recusal, and
participated in the decision to deny relief.  *Id.* The Court found this violated due
process.

Here, there was no evidence, or any indication, that the trial judge had any
personal involvement in an earlier stage of Keahey's 2011-2012 prosecution, which
is the subject of his habeas petition.  Keahey's unsupported allegation is that the
judge had previously acted as prosecutor in an earlier 1998 case.  Keahey has failed
to demonstrate that the state court's ruling was contrary to clearly established
federal law, as determined by the Supreme Court.  The petition should not be
granted on the basis of the seventh ground.

45

## VII.  CONCLUSION

Keahey has failed to establish that the state court's decisions on the third, fourth, fifth or sixth grounds involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  In addition, Keahey has failed to demonstrate that the state court's rulings on the first, second, or seventh grounds were contrary to clearly established federal law, as determined by the Supreme Court.  It is recommended that the petition be DENIED.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  April 17, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).